<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 14a0264n.06

Case No. 13-5106

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Apr 09, 2014 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| RICKEY HUGHES, aka Rickey Groves, | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE:** **SILER, McKEAGUE and WHITE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Defendant Rickey Hughes was convicted of multiple offenses in two separate trials and sentenced on January 17, 2013 to a total of 1,424 months' imprisonment. On appeal, Hughes challenges the trial court's admission of certain evidence in each trial and challenges the sufficiency of the evidence to support the jury's verdict in the second trial. Upon due consideration, we find no error and therefore affirm.

### A. First Trial - "Other Acts" Evidence

In August 2011, Hughes was tried by jury on charges of carjacking, in violation of 18 U.S.C. § 2119, and using and carrying a firearm in relation to the carjacking, in violation of 18 U.S.C. § 924(c). Hughes' co-defendant, Vyrone Williams, testified for the prosecution. Prior to Williams' testimony, Hughes made a motion in limine under Fed. R. Evid. 404(b), asking the

court to disallow anticipated evidence of other acts assertedly committed by Hughes together with Williams. The "other acts" evidence related to use of the vehicle that is the subject of the carjacking charge, a black Pontiac Sunfire, to commit other robberies later the same evening. The district court denied the motion at trial, holding the evidence related to events that were "part and parcel" of the charged offenses and was not unfairly prejudicial. R. 185 Trial Tr. at 51-52, Page ID # 382-83. On appeal, Hughes contends the evidence of his involvement in the later robberies, introduced to establish that *he* was the one who assisted Williams in the earlier carjacking, was cumulative evidence of identity and was therefore unnecessary. He contends its limited probative value was substantially outweighed by its potential for unfair prejudice.

Evidentiary rulings are generally reviewed for abuse of discretion. *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013). Under Fed. R. Evid. 404(b)(1), "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such "other acts" evidence may be admitted for some other purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Background or *res gestae* evidence is an exception to Rule 404(b). *Adams*, 722 F.3d at 810. Background evidence consists of evidence of "other acts that are inextricably intertwined with the charged offense." *Id.* (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* (quoting *Hardy*, 228 F.3d at 748). To be admissible as background or *res gestae* evidence, the evidence must

have a "causal, temporal or spatial connection" with the charged offense. *Id.* at 811 (quoting *Hardy*, 228 F.3d at 748).

The other-acts evidence admitted in this case—i.e., Williams' testimony that he and Hughes used the Pontiac Sunfire within a three-hour span after the carjacking to commit three robberies; and testimony of the three robbery victims generally corroborating Williams' testimony—was clearly connected with the charged offenses. The robberies were part of the same criminal episode and helped complete the story of the charged offenses. The district court did not abuse its discretion in determining that this other-acts evidence was intrinsic to the charged offenses and therefore came within the background or *res gestae* evidence exception to Rule 404(b).

Hughes does not seriously challenge this determination. Nor does he challenge the district court's determination that the evidence was relevant to show identity. Rather, he contends the evidence should have been excluded anyway under Fed. R. Evid. 403, because of its potential for unfair prejudice. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice. The district court's ruling that the evidence was admissible because it was not *unfairly* prejudicial is afforded broad discretionary deference. *Adams*, 722 F.3d at 812. On review of the district court's decision to admit evidence, we view the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its potential for unfair prejudice. *Id.* (citing *United States v. Lloyd*, 462 F.3d 510, 516 (6th Cir. 2006)); *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996).

Hughes contends that although the other-acts evidence was probative of identity, the evidence should have been excluded as more prejudicial than probative because it was not

integral to establishing any element of the charged offense and because Williams' testimony rendered additional testimony regarding the other acts cumulative and unnecessary. Hughes' argument that the evidence was cumulative and unnecessary ignores the fact that his defense was based on the theory that Williams was lying about the identity of his carjacking accomplice. Although Hughes admitted being in the black Sunfire for a short period after the carjacking and before the robberies, he denied taking part in either the carjacking or the later robberies. Robbery victims Tameka Mitchell and Trina Blalock made in-court identifications of Hughes as the person who took property from them at gunpoint and then fled as a passenger in the black Sunfire. Their testimony corroborated Williams' testimony and refuted Hughes' testimony. It was highly probative of Williams' credibility, which had been called into question on cross-examination. It was also probative of Hughes' active participation in the carjacking offense the government was obliged to prove beyond a reasonable doubt. The evidence can hardly be characterized as needlessly cumulative. To be sure, the evidence was prejudicial, but not unfairly so. *See Lloyd*, 462 F.3d at 517 (noting that "only *unfair* prejudice factors into the Rule 403 analysis").

The district court also took the precaution of giving a limiting instruction to minimize the potential for unfair prejudice. *See United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011) (noting that a limiting instruction is a factor in the Rule 403 assessment). The court advised the jury that the evidence was admitted for a limited purpose—i.e., to show that Hughes was the other person who committed the carjacking—and was not to be considered for any other purpose.

Accordingly, we find no abuse of discretion in the district court's Rule 403 balancing and allowance of the *res gestae* evidence of Hughes' involvement in robberies shortly after the charged carjacking.

**B. Second Trial**

**1. *Out-of-Court Identifications***

A second trial, on previously severed counts, was conducted in October 2012. Hughes was charged with committing four Hobbs Act robberies of Memphis area restaurants during April and May 2008, in violation of 18 U.S.C. § 1951, and with using and carrying a firearm during each of the robberies, in violation of 18 U.S.C. § 924(c). The government's case was based largely on testimony of eyewitnesses to the robberies who identified Hughes as the robber. The jury found Hughes guilty of all eight counts.

Prior to trial, Hughes had moved to suppress eyewitness identification testimony, contending the photographic lineups used by the police were unduly suggestive and the results unreliable. The magistrate judge conducted an evidentiary hearing on the motion and issued a ten-page report and recommendation, recommending the motion be denied. The report and recommendation includes findings of fact and conclusions of law. It concludes that Hughes failed to carry his burden of demonstrating the photographic lineups conducted by the Memphis Police Department were unduly suggestive. Hughes filed an objection to the report and recommendation, limited to one issue. He did not challenge the magistrate judge's analysis of officers' testimony under the governing legal standards, but argued the record was unfairly truncated. Hughes objected to the magistrate judge's refusal to allow examination of the witnesses who were shown the photo arrays as a means of testing the officers' testimony. The district court overruled the objection, adopted the report and recommendation, and denied the

motion to suppress. On appeal, Hughes argues the testimony of witnesses who identified him in photographic lineups should have been excluded because their identifications of him were not reliable.

The denial of Hughes' motion to suppress identification evidence is reviewed for clear error. *United States v. Washington*, 714 F.3d 962, 966 (6th Cir. 2013). A two-step analysis is used for determining the admissibility of identification testimony. First, Hughes has the burden of demonstrating the pretrial identification procedure was impermissibly suggestive. *Id.* at 966-67. *If* he carries this burden, *then* the court must evaluate the reliability of the identification evidence under the totality of the circumstances. *Id.*

Hughes clearly did not and has not carried his burden of showing the photographic lineups conducted in this case were impermissibly suggestive. He did not object to the substance of the magistrate judge's conclusion that the lineups were not unduly suggestive. Nor has he, on appeal, identified any basis to hold they were unduly suggestive. Instead, Hughes prefers to skip over the first step of the analysis and argues that the out-of-court identifications were unreliable, given the small number of witnesses who were able to make positive identifications. Yet, because Hughes never met his threshold burden of showing the photo lineups were unduly suggestive, we do not reach the second-step question of reliability. *Id.* at 968. We therefore find no error in the district court's admission of the out-of-court identification testimony.

### 2. *In-Court Identifications*

Hughes does challenge in-court identification testimony as the product of an unduly suggestive procedure. Hughes contends the process by which witnesses were asked whether the perpetrator of the robbery they witnessed was present in the courtroom was unduly suggestive,

because the only other African-American males in the courtroom during trial were the judge, the two Assistant United States Attorneys, and a United States Marshal.

Because Hughes did not assert this objection below, it is reviewable only for plain error. That is, he has forfeited plenary review; we may grant relief only upon a showing that admission of the in-court identification testimony was an error that was clear or obvious, that affected Hughes' substantial rights, and that seriously affected the fairness, integrity or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Hughes cites no legal support for his argument. In fact, prevailing authority is to the contrary. *See United States v. Thompson*, 524 F.3d 1126, 1136 (10th Cir. 2008) (holding in-court identification procedure not unconstitutionally suggestive where robber was a black man and defendant was the only black man in the courtroom); *United States v. Curtis*, 344 F.3d 1057, 1063 (10th Cir. 2003) (same); *United States v. Davis*, 103 F.3d 660, 670 (8th Cir. 1996) (same). Further, the Supreme Court has recently made clear that due process rights of defendants identified in the courtroom under suggestive circumstances are generally met through the ordinary protections in trial. *Perry v. New Hampshire*, 132 S. Ct. 716, 728-29 (2013). These protections include the right to confront witnesses; the right to representation of counsel, who may expose flaws in identification testimony on cross-examination and closing argument; the right to jury instructions advising use of care in appraising identification testimony; and the requirement of proof beyond a reasonable doubt. *Id.*

In light of these authorities, we cannot hold that the in-court identification procedure complained of was so impermissibly suggestive as to violate Hughes' due process rights. Nor can we find that admission of the in-court identification testimony was so clearly erroneous as to warrant relief under plain error review.

**3. *Evidence of Effect on Interstate Commerce***

Finally, Hughes challenges the sufficiency of the evidence to support the jury's verdict. He contends there was insufficient evidence to satisfy the "affecting interstate commerce" element of the charged Hobbs Act robberies under 18 U.S.C. § 1951.

We review the evidence in the light most favorable to the prosecution and may reverse the judgment for insufficiency of evidence only if no rational juror could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009). Circumstantial evidence alone can sustain a guilty verdict. *Id.* Moreover, the "affecting interstate commerce" element of the Hobbs Act violations requires evidence only that each robbery had a *de minimis* effect on interstate commerce. *United States v. Baylor*, 517 F.3d 899, 902-03 (6th Cir. 2008); *United States v. Chandler*, 486 F. App'x 525, 531 (6th Cir. 2012); *United States v. Frazier*, 414 F. App'x 782, 783 (6th Cir. 2011).

Hughes contends that none of the robbery victim witnesses testified to the effect of the robbery on the particular restaurant's participation in interstate commerce. He argues that it is not enough to have shown that each restaurant purchased products and supplies from other states. In this, Hughes is wrong. We have repeatedly held that just such evidence *is* sufficient to justify a rational inference that the robbery had at least a *de minimis* effect on interstate commerce. *See Baylor*, 517 F.3d at 903; *Chandler*, 486 F. App'x at 532; *Frazier*, 414 F. App'x at 783-84. Consistent with these authorities, we reject Hughes' sufficiency-of-the-evidence challenge.

**C. Prosecutorial Vindictiveness**

Finally, in his pro se supplemental brief, Hughes contends that some of the charges in the superseding indictment on which he was tried in the second trial were motivated by prosecutorial vindictiveness. He argues that charges were added only after he refused, in pretrial plea

negotiations, to waive his right to appeal his conviction in the first trial. The issue was not raised below, so we review only for plain error. Ordinarily, we may grant relief for plain error only to prevent a miscarriage of justice, where the error infecting the trial proceedings was so plain that the trial court is deemed derelict in countenancing it, notwithstanding the defendant's failure to object. *United States v. Knowles*, 623 F.3d 381, 385-86 (6th Cir. 2010).

Although prosecutorial discretion is broad, Hughes correctly argues that due process prohibits the prosecution from punishing the defendant for exercising a protected statutory or constitutional right. *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013). Yet, the plea bargaining process Hughes complains of is considered to be within the scope of legitimate prosecutorial discretion:

> Because plea bargaining offers a "mutuality of advantage to defendants and prosecutors," *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (internal quotation marks omitted), and because the prosecution's ability to threaten a reluctant defendant with heightened charges is a necessary feature of a robust plea bargaining process, increased charges resulting from a breakdown of the plea bargaining process are not deemed vindictive, regardless of the fact that the prosecutor's goal is "to persuade the defendant to forgo his constitutional right to stand trial." *United States v. Goodwin*, 457 U.S. 368, 378 (1982).

*LaDeau*, 734 F.3d at 569. It follows that the addition of charges in the superseding indictment was not an abuse of prosecutorial discretion and trial on the superseding indictment was not in contravention of Hughes' due process rights. Hughes has thus failed to show plain error warranting relief.

### D. Conclusion

Having duly considered each of Hughes' appellate claims and finding no error warranting relief, the judgment of the district court is **AFFIRMED**.